UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RALPH NATALE, DAVID PEREZ,
DEMOS DEMOPOULOS, JEFFREY ISAACS,
KIRK CONAWAY, and ROY KOHN
as TRUSTEES OF HEALTH FUND 917,
HEALTH FUND 917, RALPH NATALE,
DAVID PEREZ, KIRK CONAWAY, and ROY
KOHN as TRUSTEEES OF THE LOCAL 917
PENSION FUND, and THE LOCAL 917
PENSION FUND,

COMPLAINT

Index #: 15-CV-3251

                  Plaintiffs,         CIVIL ACTION NO.:

   -against-

GARDEN CITY JEEP CHRYSLER DODGE,
LLC and MICHAEL VILLANI

                  Defendant.
-----------------------------------------------------------------x

# C O M P L A I N T

      Plaintiffs, Ralph Natale, David Perez, Demos Demopoulos, Jeffrey Isaacs, Kirk Conaway and Roy Kohn, as Trustees of the Health Fund 917 (the "Health Trustees), Health Fund 917 (the "Health Fund"), Ralph Natale, David Perez, Kirk Conaway and Roy Kohn as Trustees of the Local 917 Pension Fund (the "Pension Trustees"), and the Local 917 Pension Fund (the "Pension Fund") by their attorneys, Klein Zelman Rothermel Jacobs & Schess LLP, allege as follows:

## NATURE OF ACTION

    1.    This action is brought by Plaintiffs pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), 29 U.S.C. §§1132 and 1145, to enforce the provisions of the Agreements and Declarations of Trust (the "Trust Agreements") establishing the Health Fund and the Pension Fund (collectively, the

{00122253;1}

"Funds") and to enforce the Defendants' obligations to make contributions to the Funds under the terms of the collective bargaining agreement with Local 917, International Brotherhood of Teamsters, AFL- CIO ("Local 917") and/or their obligations to make contributions to the Funds under the Trust Agreements establishing the Funds and the Funds' Delinquent Contribution and Payroll Examination Policy and Procedure (the "Delinquency Procedure").

2. This action is also brought against Defendant Michael Villani ("Villani") pursuant to Sections 404 and 406 of ERISA, 29 U.S.C. §§1104 and 1106, for breach of his duties as a fiduciary of the plaintiff Funds.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to Sections 404, 406 502 and 515 of ERISA, 29 U.S.C. §§1104, 1106, 1132 and §1145.

4. Venue is proper in this District pursuant to ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2), because the Fund is administered in Nassau County, New York.

## PARTIES

5. The Health Trustees and Pension Trustees are fiduciaries of the Health Fund and Pension Fund, respectively, as defined under ERISA Section 3(21)(A), 29 U.S.C. §1003(21)(A). The Health Fund is an "employee welfare benefit plan" and a "multiemployer plan" within the meaning of ERISA Section 3(1) and (37), 29 U.S.C. §1002(1) and (37), which is maintained for the purpose of providing health and welfare benefits to eligible participants and beneficiaries and is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5) (hereinafter "LMRA"). The Pension Fund is an "employee pension benefit plan" and a "multiemployer plan" within the meaning of section 3(2) and (37) of ERISA, 29 U.S.C. §1002(2) and (37). The Funds are qualified to commence

this action pursuant to Section 502(d)(1) of ERISA, 29 U.S.C. §1132(d)(1). Plaintiffs bring this action on behalf of the participants and beneficiaries of the Funds.

6. The Funds are administered and maintain their principal place of business at 22 North Tyson Avenue, Floral Park, New York 11001.

7. Upon information and belief Defendant Garden City Jeep Chrysler Dodge, LLC (hereinafter "Garden City") is a corporation organized under the laws of the State of New York with its offices and principal place of business located 283 North Franklin Street, Hempstead, New York 11550, and an employer engaged in an industry affecting commerce within the meaning of Section 3(5), (11) and (12) of ERISA, 29 U.S.C. §1102(5), (11) and (12).

8. Upon information and belief, Michael Villani ("Villani") is a resident of New York, and an owner of Garden City.

## BACKGROUND

9. At all times relevant hereto Garden City was party to a series of collective bargaining agreements with Local 917, an affiliate of the International Brotherhood of Teamsters (the "Union").

10. Specifically, Garden City and the Union were parties to a collective bargaining agreement from January 1, 2007 through December 31, 2010 (the "2007 CBA") and a subsequent collective bargaining agreement from January 1, 2011 through December 31, 2013 (the "2011 CBA"). True and correct copies of the 2007 CBA and the 2011 CBA (collectively, the "CBAs") are attached hereto as Exhibit A and Exhibit B, respectively.

11. The Terms of the 2011 CBA remained in effect until March 1, 2014.

12. Pursuant to both the 2007 CBA and the 2011 CBA, Garden City agreed to make contributions to the Health Fund so as to permit its employees covered by the CBAs to receive

medical benefits. (See Exhibit A at p. 11; Exhibit B at p. 10.)

13. Pursuant to the 2007 CBA, Garden City agreed to make contributions to the Pension Fund for employees covered by the CBA from January 1, 2007 through December 31, 2010 to permit its employees covered by the CBA to receive pension benefits. Pursuant to the 2011 CBA, effective January 1, 2011 Garden City was no longer required to contribute to the Pension Fund.

14. Section 27 of the 2007 CBA requires that Garden City contribute to the Health Fund for each eligible employee in the bargaining unit at the rate of $632 per month during the period from January 1, 2007 through December 31, 2007. (See Exhibit A at p. 11.)

15. Section 27 of the 2007 CBA further provides that Garden City agrees to pay any increase in the cost of the medical plan, up to 5% per year, as determined "based on an actuarial study by the Trustees of the [Health] Fund and the Martin E. Segal Company." (See Exhibit A at p. 11.)

16. Based on these provisions, Garden City was required to make monthly contributions for each eligible employee as follows:

| Time Period | Monthly Contribution |
|---|---|
| 1/1/07 – 12/31/07 | $632 |
| 1/1/08 – 12/31/08 | $658 |
| 1/1/09 – 12/31/09 | $691 |
| 1/1/10 – 12/31/10 | $726 |

17. The 2010 monthly contribution rate of $726 per eligible employee remained in effect until the 2011 CBA was ratified.

18. The 2011 CBA was ratified on or about May 1, 2011.

{00122253;1}                                4

19. Section 27 of the 2011 CBA requires that Garden City contribute to the Health Fund for each employee in the bargaining unit as follows:

| Time Period | Monthly Contribution |
| --- | --- |
| 5/1/11 – 4/30/12 | $800 |
| 5/1/12 – 4/30/13 | $840 |
| 5/1/13 – 12/31/13 | $882 |

(See Exhibit B at p. 10.)

20. The monthly contribution to the Health Fund of $882 per eligible employee remained in effect until March 1, 2014.

21. Section 28 of the 2007 CBA requires that Garden City make monthly contributions to the Pension Fund for each eligible employee as follows:

| Time Period | Monthly Contribution |
| --- | --- |
| 1/1/07 – 12/31/07 | $178.46 |
| 1/1/08 – 12/31/08 | $196.31 |
| 1/1/09 – 12/31/09 | $215.62 |
| 1/1/10 – 12/31/10 | $237.18 |

(See Exhibit A at p. 12.)

22. Section 28 of the 2011 CBA allowed Garden City to cease contributing to the Pension Fund when the 2011 CBA was ratified.

23. The 2010 monthly contribution rate of $237.18 per eligible employee remained in effect until the 2011 CBA was ratified on or about May 1, 2011.

24. On or about April 18, 2011, Garden City withdrew from the Pension Fund and stopped making contributions.

25. Pursuant to the CBAs and by virtue of its participation in the Fund, Garden City is also bound to the Trust Agreements establishing the Funds and the Funds' Delinquency Procedure. A true and correct copy of both are attached as Exhibit C.

26. Pursuant to the CBAs and the Funds' governing documents, Garden City is obligated to submit monthly reports to Plaintiffs and pay contributions on a monthly basis for employees in the bargaining unit covered by the CBA.

27. Contributions to the Health Fund are due by the 25th day of the month preceding the month for which payments are credited. (See Exhibit A at p. 11; Exhibit B at p. 10.)

28. Contributions to the Pension Fund were due by the 10th day of the month following the month for which payments are credited. (See Exhibit A at p. 10.)

29. The Trust Agreements governing the Funds provide that the Funds may audit the books and records of contributing employers in order to ensure that the correct amounts of contributions are being made to the Funds.

30. The Health Fund Trust Agreement states that "[t]itle to all monies accrued, owing, due or paid into the Fund . . . shall constitute plan assets as of the date that their payment is due to the Fund; outstanding and withheld contributions, and any other monies due to the Fund, shall constitute plan assets as of the date that their payment is due to the Fund."

31. The Pension Fund Trust Agreement similarly states that "[t]itle to all monies accrued, owing, due or paid into the Fund . . . shall constitute plan assets as of the date that their payment is due to the Fund; outstanding and withheld contributions shall constitute plan assets as of the date that their payment is due to the Fund."

32. In 2013, the Funds conducted a payroll audit of Garden City covering the period January 1, 2007 through December 31, 2011 (the "Audit Period"). The payroll audit initially

revealed that Garden City underpaid the Health Fund by $48,712.00 and the Pension Fund by $5,627.91 during the Audit Period (the "Initial Findings").

33. By letter dated March 15, 2013, the Funds provided Defendants with a copy of the audit report. The March 15, 2013 letter advised Defendants "If you do not agree with [the results of the Initial Findings] you must put your comments or discrepancies in **writing** and send them to [the Funds' accountants], **within 30 days**." (Emphasis in original.) A true and correct copy of the March 15, 2013 letter, with the enclosed audit report, is attached hereto as Exhibit D.

34. Based on information supplied by Defendants, the payroll audit was revised. The revised payroll audit revealed that Garden City underpaid the Health Fund by $14,904.00 and the Pension Fund by $5,627.91 during the Audit Period (the "Second Findings").

35. By letter dated September 25, 2013, the Funds provided Defendants with a copy of the revised audit report for the Health Fund and advised Defendants that the audit report for the Pension Fund was unchanged.

36. The September 25, 2013 letter further advised Defendants that "If you do not agree with [the results of the Second Findings] you must put your comments or discrepancies in **writing** and send them to [the Funds' accountants], **within 30 days**." (Emphasis in original.) A true and correct copy of the September 25, 2013 letter, with the enclosed audit report, is attached hereto as Exhibit E.

37. By letter dated December 18, 2013, Local Union No. 917 advised that Funds that it agreed with Garden City's position that the probationary period for three employees had been extended. A true and correct copy of the December 18, 2013 letter, with the enclosed audit report, is attached hereto as Exhibit F.

38. Based on the information supplied by Local Union No. 917, the payroll audit was

revised to remove the Health Fund findings for the three individuals whose probationary period had been extended. The revised payroll audit revealed that Garden City underpaid the Health Fund by $9,600.00 and the Pension Fund by $5,627.91 during the Audit Period (the "Third Findings").

39.     By letter dated December 18, 2013, the Funds advised Defendants that the "Health Fund findings [i.e., the Second Findings] had been revised to remove" three individuals.

40.     The December 18, 2013 letter also advised Defendants that "pension amount due of $5,627.91 remains unchanged."

41.     The December, 18 2013 letter advised Defendants that they had until January 10, 2014 to pay the sums due. A true and correct copy of the December 18, 2013 letter is attached hereto as Exhibit G.

42.     On October 20, 2014, the Funds, through their counsel, demanded payment of the amounts due within ten days. A true and correct copy of the October 20, 2014 letter is attached hereto as Exhibit H.

43.     To date Defendants have not submitted payment of the underpayment or any portion thereof.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

(Against Defendant Garden City)

44.     Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 31 of the Complaint as if fully set forth herein.

45.     Section 515 of ERISA, 29 U.S.C. § 1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the

terms of a collective bargaining agreement…[to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

46. Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan."

47. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), requires that "[i]n any action brought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan-

(A) the unpaid contributions;
(B) interest on the unpaid contributions;
(C) an amount equal to the greater of-
   (i) interest on the unpaid contributions, or
   (ii) liquidated damages…..in an amount not in excess of 20 percent of the [unpaid contributions],
(D) reasonable attorney's fees and costs of the action, to be paid by defendant, and
(E) such other legal or equitable relief as the court deems appropriate."

48. On December 18, 2013, Defendants were sent a copy of the Third Findings with a demand for payment. Subsequently the Funds' counsel made a demand for payment of the Third Findings on October 20, 2014. Garden City has not paid the amount due based on the Third Findings.

49. Accordingly, Defendants are liable to Plaintiffs under the terms of the respective Fund's governing documents, the 2007 CBA, the 2011 CBA and under Sections 505 and 515 of ERISA for the amounts due to the Fund.

## AS AND FOR A SECOND CAUSE OF ACTION

(Against Defendant Villani)

50. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 36 as though fully set forth herein.

51. Upon information and belief, Villani was a person with discretion and/or authority to pay contributions to the Fund on behalf of Garden City.

52. Contributions and other monies due and payable to the Fund by Garden City are "plan assets" within the meaning of Section 3(21)(a) of ERISA, 29 U.S.C. §1002(21)(a), when they become due.

53. Upon information and belief, Villani exercised authority and/or control over payment of contributions and monies due to the Funds from Garden City and therefore was a fiduciary as defined in Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

54. Under Section 404(a)(1)(A) of ERISA, 29 U.S.C. §1104(a)(1)(A), an ERISA fiduciary must act solely in the interest of plan participants and beneficiaries.

55. Upon information and belief, Villani caused Garden City not to pay contributions and other monies to the Funds that had become plan assets of the Funds when they became due from Garden City, thus breaching his fiduciary duties under Section 404 of ERISA to act solely in the interest of the Fund participants and beneficiaries.

56. Pursuant to Section 409 of ERISA; 29 U.S.C. §1109, a fiduciary who breaches any of the responsibilities, obligations or duties imposed on a fiduciary under ERISA is personally liable to a plan for any losses resulting from such breach.

## AS AND FOR A THIRD CAUSE OF ACTION

(Against Defendant Villani)

57. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 43 as though fully set forth herein.

58. Pursuant to Section 406(a)(1)(D) of ERISA, 29 U.S.C. §1106(a)(1)(D), a plan fiduciary may not transfer any plan assets to a party-in-interest.

59. Upon information and belief, Villani is a party in interest with respect to the Funds as defined by Section 3(14)(C) of ERISA, 29 U.S.C. §1002(14)(C) because Garden City is an employer whose employees are covered by the Funds.

60. Upon information and belief, Villani transferred monies due the Funds to Garden City instead of paying them to the Funds, thus breaching his fiduciary duties to the Funds under Section 406(a)(1)(D) of ERISA, 29 U.S.C. §1106(a)(1)(D).

61. Pursuant to Section 409 of ERISA; 29 U.S.C. §1109, a fiduciary who breaches any of the responsibilities, obligations or duties imposed on a fiduciary under ERISA is personally liable to a plan for any losses resulting from such breach.

## AS AND FOR A FOURTH CAUSE OF ACTION

( Against Defendant Villani)

62. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

63. Pursuant to Section 406(b) of ERISA, 29 U.S.C. §1106(b), a plan fiduciary may not use plan assets in his/her own interest or for her/his own account and may not act in any transaction involving the Funds on behalf of a party whose interests are adverse to the interests of the Fund.

64. Upon information and belief, Villani acted in his own interest, for his own account or on behalf of Garden City, whose interests are adverse to the Funds, by retaining "plan assets" or allowing "plan assets" of the Fund to be used to pay Garden City's debts or obligations to other parties.

65. Villani breached his fiduciary duties to the Funds under Section 406(b) of ERISA, 28 U.S.C. §1106(b) insofar as he retained contributions or monies due to the Funds or allowed them to be used on behalf of Garden City whose interests were adverse to the Funds.

66. Plaintiffs have been required to employ the undersigned attorneys to collect monies that may be found due and owing from Defendants and are obligated to pay their attorneys a reasonable attorney's fee.

67. Pursuant to Section 409 of ERISA; 29 U.S.C. §1109, a fiduciary who breaches any of the responsibilities, obligations or duties imposed on a fiduciary under ERISA is personally liable to a plan for any losses resulting from such breach.

## AS AND FOR A FIFTH CAUSE OF ACTION

(Against Defendant Garden City and Defendant Villani)

68. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

69. Defendants' improper contributions during the Audit Period raise the question of whether Defendants have accurately reported contributions subsequent to the Audit Period.

70. Garden City's books and financial records are the only method to review whether Defendants reported the correct hours and made the correct contributions for the period from January 1, 2012, to February 28, 2014.

71. Garden City's financial books and records are in the exclusive control of Defendants.

72. The potential hardship to Defendants of an Order requiring that Plaintiffs' auditors be given access to Garden City's books and records are outweighed by the Plaintiffs' interests in assuring that Defendants have fulfilled their contractual and statutory obligations to the Plaintiffs.

73. There is no adequate remedy at law.

74. All conditions precedent to equitable relief have been satisfied.

**WHEREFORE**, Plaintiffs request that judgment be entered in favor of Plaintiffs and against Defendants, jointly and severally, as follows:

  i. For unpaid contributions in the amount of $15,227.91 ($9,600 to the Health Fund and $5,627.91 to the Pension Fund) for the period January 1, 2007 through December 31, 2011, pursuant to 29 U.S.C. §1132(g)(2)(A);

  ii. For interest on all monies due, calculated from the due date of the contributions through the present at a rate of ten percent (10%) per annum, pursuant to 29 U.S.C. §1132 (g)(2)(B) and the respective Fund's governing documents;

  iii. For liquidated damages in an amount equal to the greater of (a) the amount of interest awarded in paragraph (ii) above, or (b) twenty percent (20%) of the amount of unpaid contributions pursuant to 29 U.S.C. §1132 (g)(2)(C);

  iv. For the cost of the audit for the Audit Period in the amount of $8,786 pursuant to the Funds' governing documents;

  v. For the costs of filing this action pursuant to 29 U.S.C. §1132 (g)(2)(D);

  vi. For reasonable attorney's fees incurred by Plaintiffs pursuant to 29 U.S.C. §1132 (g)(2)(D);

  vii. For an order requiring Defendants to provide the Plaintiffs' auditors access to all necessary information to complete a payroll audit of the

       period from January 1, 2012 to February 28, 2014;

viii. For an order requiring Defendants to schedule a time for the Plaintiffs' auditors to visit Garden City's premises to complete the audit no later than thirty (30) days following the date of entry of the order;

ix. For the costs of the audit for the period from January 1, 2012 to February 28, 2014;

x. Retain jurisdiction to enter judgment for any contributions found due and owing as a result of the audit; and

xi. For such other and further relief as this Court deems appropriate.

Dated: June 4, 2015
      New York, New York

                KLEIN ZELMAN ROTHERMEL JACOBS & SCHESS LLP

                BY: /s/ _____
                     Jane B. Jacobs (2925)
                     Jesse Grasty (5357)
                     485 Madison Avenue, 13th Floor
                     New York, New York 10022
                     (212) 935-6020
                     *Attorneys for Plaintiffs*